J-A20038-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ESTATE OF EDWARD C. WAGNER | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: TAMMY WAGNER AND JAMES R. WAGNER, JR. | : : | No. 1907 WDA 2017 |

Appeal from the Order Entered December 1, 2017
in the Court of Common Pleas of Westmoreland County,
Orphans' Court at No(s):  65-05-2323

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    FILED OCTOBER 31, 2018

Tammy Wagner ("Wagner") and James R. Wagner, Jr. ("Wagner, Jr."),

appeal from the Order of the Orphans' Court, which granted the Motion filed

by the Administratrix of the Estate of Edward C. Wagner ("the Estate"), Peggy

Hooker, Esquire ("Attorney Hooker"), surcharged Wagner the sum of

$6,430.00, and directed that Wagner, Jr., be jointly liable for $2,430.00 of

that amount.  We affirm.

This case involves protracted litigation over the administration of the

Estate.  Edward C. Wagner ("Decedent") died on September 25, 2005.  At the

time of his death, Decedent was married to Sandra J. Wagner ("Sandra").

Although the two had parted, Decedent never secured a divorce from Sandra.

Thereafter, Decedent purportedly married Mary B. Shaulis ("Mary"), and lived

with her prior to his death.  Consequently, at the time of his death, Decedent

was legally married to Sandra, and not legally married to Mary.

Following Decedent's death, Wagner[1] filed a Petition for Grant of Letters Testamentary, and presented for probate a document purporting to be Decedent's will. Richard F. Flickinger, Esquire ("Attorney Flickinger"), represented Wagner before the Orphans' Court. The Register of Wills determined that document lacked the appropriate acknowledgement and signature of Decedent. Consequently, the Register of Wills declined to recognize the writing as Decedent's will. Notwithstanding, the Register of Wills determined that the document's appointment of Wagner as executrix for the Estate was valid. The Register of Wills thereafter appointed Wagner as Executrix for the Estate, and granted Wagner Letters of Administration on October 28, 2005.

While Executrix for the Estate, Wagner commenced an action to quiet title to certain real property held by Decedent and Mary at the time of Decedent's death (hereinafter, "the quiet title action"). Because Mary was not legally married to Decedent, the quiet title action would determine whether Decedent and Mary held two parcels as tenants-in-common, or as joint tenants with the right of survivorship ("JTWROS").[2]

_____

[1] Wagner is married to Decedent's nephew, Wagner, Jr.

[2] "When two or more persons hold property as JTWROS, title to that property vests equally in those persons during their lifetimes, with sole ownership passing to the survivor at the death of the other joint tenant." In re Estate of Quick, 905 A.2d 471, 474 (Pa. 2006) (citation omitted). "In contrast, a tenancy in common is an estate in which there is unity of possession but separate and distinct titles." Id.

The quiet title action involved real property purchased by Decedent and Mary in 1998. Attorney Flickinger represented Decedent and Mary in the real estate transaction. The resulting October 22, 1998, deed identified the grantees as "Edward C. Wagner and Mary B. Wagner, his wife." See Estate Inventory, 1/7/2014. In March 2002, Decedent and Mary acquired an adjoining parcel, but it is not clear whether Attorney Flickinger was involved in that acquisition. In December 2005, Mary signed two deeds conveying her interest in the two parcels to her daughter, Rose M. Blough ("Rose"), and Rose's husband, Kenneth E. Blough (collectively, "the Bloughs").[3]

On December 20, 2013, the Bloughs filed a Petition for Citation to Show Cause Why [] Wagner Should not be Removed as Executrix (hereinafter, "the Removal Petition"), and requested an accounting of the Estate. On January 15, 2014, Wagner filed a First and Partial Account and an Inventory of the Estate.[4] On January 24, 2014, after a hearing, the Orphans' Court entered an Order discharging Wagner as Executrix of the Estate, and appointing Attorney Hooker as Administratrix d.b.n. See Orphans' Court Order, 1/24/14. Thereafter, the Register of Wills granted Letters of Administration to Attorney

_____

[3] Mary died in December 2009, survived by Rose and James P. Shaulis, Mary's son.

[4] Wagner filed a First Amended Account on February 13, 2014, detailing her administration of the Estate.

Hooker. In March 2014, Attorney Flickinger withdrew his appearance on behalf of Wagner. On October 30, 2014, Attorney Flickinger entered his appearance, in the Orphans' Court proceeding, on behalf of Wagner and Janet S. Wagner ("Janet").[5]

On March 19, 2015,[6] the Orphans' Court entered an Order finding that Sandra had not forfeited her right as the sole heir of Decedent, and that she is the sole intestate heir of the Estate.[7] See Orphans Court Order, 3/19/15. On April 13, 2015, Attorney Flickinger, on behalf Wagner, Jr., filed a Petition for Reconsideration of the Orphans' Court's March 19, 2015 Order. On April 16, 2015, the Orphans' Court entered an Order expressly granting reconsideration of its March 19, 2015 Order. See Orphans' Court Order, 4/16/15. Ultimately, by an Order dated April 30, 2015, the Orphans' Court denied Wagner, Jr., the relief he sought, and reinstated its March 18, 2015 Order.[8] See Orphans' Court Order, 4/30/15. Wagner, Jr., did not file an appeal of the May 1, 2015 Order.

_____

[5] Janet is the widow of James R. Wagner, Sr., who was the brother of Decedent and the father of Wagner, Jr.

[6] The Orphans' Court's Order is dated March 18, 2015, but was filed on March 19, 2015.

[7] Thus, this Order declared the status of Wagner, Jr., as a non-beneficiary of the Estate. See Pa.R.A.P. 342(a)(5) (providing that an order declaring the status of beneficiaries is immediately appealable).

[8] The Orphans' Court Order is dated April 30, 2015, but was filed on May 1, 2015.

In July 2015, the Bloughs filed a Motion to Disqualify Attorney Flickinger in the quiet title action. After a hearing, on September 28, 2015, the common pleas court disqualified Attorney Flickinger from appearing in the quiet title action. This Court quashed an appeal of that Order. See Hooker v. Wagner, 159 A.3d 587 (Pa. Super. 2016) (unpublished memorandum).

In June 2016, Attorney Hooker filed a Petition for a declaratory judgment in the Orphans' Court proceeding. Specifically, Attorney Hooker sought a declaration regarding the effect of a release, signed by Sandra, which purportedly assigned Sandra's interest in the Estate to the Bloughs. Attorney Flickinger filed a response to the Petition on behalf of the Wagners. The Orphans' Court scheduled a hearing on the Petition, but did not permit Attorney Flickinger to participate at that hearing.[9] On December 15, 2016, the Orphans' Court entered an Order declaring, inter alia, that Decedent's natural heirs (including Wagner, Jr.) have no claim to the Estate; Sandra's assignment of her rights to the Bloughs precludes Sandra or her heirs from asserting any claim against Mary and/or the Bloughs; and nothing in the Decree precluded Attorney Hooker from pursuing the quiet title action. See Orphans' Court Order, 12/15/16. On January 3, 2017, Attorney Flickinger filed a Motion for Reconsideration, asking that the Orphans' Court note in its

_____

[9] There is no order of record disqualifying Attorney Flickinger from representing Wagner, Jr. and Janet.

Order that Attorney Flickinger was present, but not permitted to appear on behalf of the Wagners. See Motion for Reconsideration, 1/3/17. There is no docketed order granting reconsideration.[10]

In the interim, on December 15, 2016, Attorney Hooker filed in the Orphans' Court a Petition for Citation ("the Petition") to show cause why Wagner should not be compelled to restore certain assets to the Estate. In relevant part, Attorney Hooker averred that (1) Wagner had appropriated $2,479.16 from Decedent's bank account, and had failed to list those funds on the Estate's inventory; and (2) Wagner failed to collect certain firearms, owned by Decedent, for administration through the Estate. See Petition, 12/15/16, ¶ 13. After a hearing, the Orphans' Court entered an Order directing that Wagner immediately refund $2,479.16 to the Estate. See Orphans' Court Order, 1/9/17. The Orphans' Court additionally surcharged Wagner for (1) the value of Decedent's firearms that Wagner previously had distributed to James R. Wagner, Sr., Thomas Wagner, and Wagner, Jr., plus any costs incurred by the Estate to determine their value; and (2) the value of any other of Decedent's firearms found to be in the possession of Wagner's family members, plus the costs incurred by the Estate to determine their value; and (3) the counsel fees and costs incurred by Attorney Flickinger, as

_____

[10] We note that the certified record includes a purported Order granting reconsideration, which is dated December 30, 2016. That Order was not docketed, and there is no time stamp on the Order.

approved by the Orphans' Court, in connection with the early administration of the Estate. See id.

The Wagners subsequently filed a Notice of Appeal of the Orphans' Court's January 9, 2017, Order. On February 17, 2017, the Bloughs filed an Application to Quash the appeal, arguing that (1) the Wagners lack standing to appeal, as they were not aggrieved by that Order; and (2) the Wagners had failed to preserve for review a challenge to the disqualification of their counsel. See Application to Quash, 2/17/17, at 3-4, 6. On April 7, 2017, this Court quashed the appeal of the January 9, 2017 Order. See In re Estate of Wagner, No. 100 WDA 2017 (Pa. Super. filed April 7, 2017).

On December 1, 2017, Attorney Hooker filed a Motion to Compel Wagner and Wagner, Jr. (collectively, "Appellants") to restore funds to the Estate (hereinafter referred to as "the Motion"). According to the Motion, Wagner misappropriated $4,000 out of Decedent's checking account three days prior to his death. Motion, 12/1/17, at ¶¶ 2-3. Attorney Hooker further asserted that Wagner had not restored to the Estate the value of the firearms referenced in the Orphans' Court's January 9, 2017 Order. Id. at ¶¶ 4-5. Attorney Hooker averred that, although Wagner had refused to make the firearms available for appraisal, Attorney Hooker was able to secure two appraisals, which she attached to her Motion. Id. ¶¶ 6-12. Additionally, Attorney Hooker sought the costs for securing the appraisals of the firearms. Id. ¶ 13. In total, Attorney Hooker sought $6,430.00 from Appellants.

On December 1, 2017, the Orphans' Court entered the Order at issue in the instant appeal. The Orphans' Court's Order granted Hooker's Motion, surcharged Wagner the sum of $6,430.00, and ordered that Wagner, Jr., is jointly liable with Wagner for the sum of $2,430.00, which sum was related to Decedent's firearms in Wagner, Jr.'s possession. Thereafter, Appellants filed the instant timely appeal of the Orphans' Court's December 1, 2017 Order. In addition, Appellants appealed the Orphans' Court's Orders entered on February 14, 2014, March 19, 2015, April 30, 2015, December 15, 2016, and January 9, 2017. Appellants subsequently filed a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

Attorney Hooker filed a Motion to quash Appellants' appeal of the Orphans' Court's Orders entered on February 14, 2014, March 19, 2015, April 30, 2015, December 15, 2016, January 9, 2017, and December 1, 2017. By an Order entered on February 14, 2018, this Court granted Attorney Hooker's Motion, in part. Specifically, this Court's Order quashed the appeals from the Orphans' Court's Orders entered on March 19, 2015, April 30, 2015, December

15, 2016, and January 9, 2017.[11]  Thus, this Court only permitted Appellants'

appeal of the December 1, 2017, Order to proceed.

Appellants present the following claims for our review:

1. Did the [Orphans' Court] err in prohibiting [A]ppellants' counsel from representing [A]ppellants?

2. Did the [Orphans' Court] err in determining that Sandra [] was entitled to inherit from [Decedent] as his widow, when it was shown [that] she had left him and married Charles Kelly some 20 years previously?

3. Did the lower court err in determining that the "Release" signed by Sandra [] was an assignment of her rights and not a release of any claims against [the Estate]?

Brief for Appellants at 8.

Appellants first claim that the December 1, 2017 Order cannot stand,

because the Orphans' Court improperly prohibited Appellants from having the

representation of their attorney of choice:  Attorney Flickinger.  Id. at 20.

According to Appellants, an attorney-client relationship existed between

Attorney Flickinger and Decedent and Mary in 1998.  Id. at 21.  They assert

_____

[11] Appellants had failed to file an appeal within 30 days of the Orphans' Court's Orders entered on February 14, 2014, March 19, 2015, and April 30, 2015. See Pa.R.A.P. 903(a) (requiring that a notice of appeal be filed within 30 days after entry of the order from which the appeal is taken).  As non-heirs, Appellants lack standing to appeal the December 15, 2016 Order, which determined the legal effect of an assignment of rights to the Estate.  Wagner, Jr., filed an appeal within 30 days of the January 9, 2017 Order.  However, he had no standing to challenge the imposition of a surcharge on Wagner, which was the subject of that Order.  Wagner was not named as a party to the appeal of the January 9, 2017 Order.

that Attorney Flickinger's representation of Decedent and Mary in 1998 has no relevance to the issue of the marital status of Decedent and Mary, which arose in the context of the quiet title action in 2005. Id. at 22. Further, Appellants argue, because Mary conveyed her interest in the property to the Bloughs, she has no remaining interest in the litigation. Id. Appellants posit that whatever the results of the instant litigation, it would not impact Mary's interests, should Attorney Flickinger represent them. Id. Although the same real estate may be involved, Appellants argue, "the matters affecting it are very different, and the issues involved in 1998[,] when Attorney Flickinger represented [] Mary [] and Decedent[,] are not the same issues—or people—involved today." Id. at 24.

In its Opinion filed on March 30, 2017, the Orphans' Court addressed the disqualification of Attorney Flickinger, and, quoting the Opinion of the trial court in the quiet title action, determined that Attorney Flickinger's disqualification was appropriate. See Orphans' Court Opinion, 3/30/17, at 5-7. We agree with the Orphans' Court's determination, and affirm on this basis with regard to Appellants' first claim. See id.

Our review discloses that the second and third claims raised by Appellants, and addressed in their appellate brief, do not pertain to the Orphans' Court's December 1, 2017 Order. Rather, they pertain to the appeals quashed by this Court, as set forth in this Court's February 14, 2018 Order. Because Appellants present no further challenge to the Orphans'

Court's December 1, 2017 Order, which is the only Order subject to review in the present appeal, we affirm that Order.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/31/2018

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
COMMONWEALTH OF PENNSYLVANIA

ORPHANS' COURT DIVISION

IN RE:                                    )
                                          )
ESTATE OF EDWARD C. WAGNER      )        No. 65-05-2323
                                          )
                                          )

## ORDER OF COURT PURSUANT TO RULE 1925(a) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

AND NOW, to wit, this ⎰⎱day of March, 2017, the Court hereby issues the following

Opinion in support of the Order appealed from, indicating those places in the record where such

reasons for the court's rulings can be found, pursuant to Pennsylvania Rule of Appellate

Procedure No. 1925(a).

In their *Concise Statement of Errors Complained of on Appeal*, the Appellants raise

several issues, which we will address seriatim.

I.

Appellants challenge the Court Order dated February 14, 2014, in which Tammy Wagner

was removed as Administratrix of the Estate, claiming the Court erred in failing to require that

Rose M. Blough ("Petitioner") first file objections to the account filed by Tammy Wagner

("Respondent/Appellant"), before reaching its decision. This matter was before the Court on

January 23, 2014 with regard to Petitioner Rose Blough's *Petition for Citation to Show Cause*

*why Tammy Wagner should not be Removed as Executrix and why an Account Should Not be*

*Filed.* Respondent argues that the Petitioner failed to file an objection to the account filed by

Tammy Wagner (Respondent) and that the proper remedy would have been to file written

1.

objections to the accounting. This argument lacks merit, as Tammy Wagner failed to file an Account until after Petitioner filed a Rule to Show Cause as to why she should not be removed as Executrix.

The decedent's date of death was on September 25, 2005. No accounting was filed until after the within petition was presented to the Court, and then only after the Court conducted an evidentiary hearing on January 23, 2014. The Court also notes that at the January 23, 2014, evidentiary hearing, the Court allowed the record to remain open for a period of twenty (20) days to allow Respondent an opportunity to file an accounting in support of what the Court found to incredible testimony she presented at said hearing. Respondent ultimately filing her accounting on February 13, 2014, approximately 8 ½ years after decedent's death.

Petitioner filed this pleading with the Court in light of her concern that the Respondent was misappropriating estate assets. After a hearing on this matter, the Court agreed that the evidence was clear and convincing that the Respondent, Tammy Wagner, was, at best, negligently handling the administration of decedent's estate, which included a likelihood that she had misappropriated estate assets consisting of cash, firearms, and a motor vehicle, all of which was to the detriment and exclusion of creditors of the estate. This Court reached this conclusion after hearing the testimony of Ms. Wagner, when it became clear that she lacked any coherent understanding of her role as Administratrix of this estate. Ms. Wagner's testimony, as presented, established that in spite of being sworn in as Administratrix of the decedent's estate, she failed to pay any of the bills owed by the estate, with the sole exception of a $100 payment to the funeral home that handled the decedent's viewing and burial. Furthermore, the testimony elicited by Counsel for the Petitioner convinced this Court that Respondent was not credible, was aloof to her responsibilities, had failed to pay any of the debts associated with the decedent's

2

estate, and potentially failed to properly account for many of the estate assets. Instead, the Respondent's testimony convinced this Court that she was negligently mishandling the administration of the estate by disposing of the decedent's private property - for example, in writing a check in the amount of $4,000.00 out of the decedent's checking account three days prior to his death and making disposition of said funds in a manner contrary to the administration of the estate. (*See* Transcript, pp. 26-27.) Respondent testified that she signed, under authorization as the decedent's Power of Attorney, a check for cash in the amount of $4,000, three days prior to the decedent's death. (*See* Transcript, 1/23/14, pp. 26-27.) Thereafter, it was clear that the Respondent had no idea what happened to those funds. Respondent failed to open an estate bank account out of which the decedent's bills would be paid, and openly admitted to not paying any of the decedent's bills. Respondent's credibility was further impeached when confronted about cash that belonged to the decedent's estate, which she turned over to her husband. (*See* Transcript, p. 59.) In addition, a truck that belonged to the decedent at the time of his death, was also transferred to Respondent's husband, with no accounting of the same being made. (*See* Transcript, p. 63.) Furthermore, the decedent owned a number of firearms at the time of his death, yet none were accounted for, and Respondent was unable to verify their disposition other than to state that three of these firearms were given to her husband. Respondent's testimony regarding the firearms was: "[He] called us while Ed was still in the hospital and said that Ed gave me all the guns. I'm not lying about nothing. I'm getting nothing in this case. I just want out of it". (*See* Transcript, p. 64.)

The Court found Respondent's testimony to be incredible at the January 23, 2014, hearing. In light of this testimony, and the Respondent's delay of over eight (8) years in filing an accounting in this matter, and the original account being devoid of the property in question,

3  109a

namely, the $4,000.00 cash, the Ford truck, the firearms, and Respondent's complete lack of understanding of her fiduciary role as Administratrix of this estate, the Court did not commit an error of law in entering its Order dated February 14, 2014, removing Tammy Wagner as the Administratrix of the Estate of Edward C. Wagner.

II.

Appellants challenge the Court Order dated February 14, 2014, in which Tammy Wagner was removed as Administratrix of the Estate, claiming the Court erred in dismissing Respondent/Appellant's challenge to Rose M. Blough's standing to contest the administration of the Estate, because she was not an heir or a creditor, and the Court did not address how she obtained standing.

The Court incorporates by reference its analysis above to Appellant's second matter complained of on appeal. The Court found that Rose M. Blough, had standing to petition the court as she is the daughter of Mary Wagner, who resided with the decedent, Edward C. Wagner, at the time of his death. Mary Wagner and the decedent, were named as husband and wife and jointly owned real estate as husband and wife at the time of Edward C. Wagner's death.

Additionally, in response to Respondent's issue of standing with regard to Petitioner Rose M. Blough, the Court directed that letters of administration, d.b.n., were to be issued to Attorney Peggy Hooker, in order to avoid any potential conflict.

It is the opinion of this Court that the issue of standing having been raised and considered, no error of law was committed with regard to Appellant's second reason complained of on appeal, the Order of Court dated February 14, 2014, was appropriate, and no error of law was committed by the Court.

4

## III.

Appellants challenge the Court Order dated March 18, 2015, which was confirmed on April 30, 2015, alleging the Court erred in finding Sandra J. Kelly was the wife of the decedent and the sole intestate heir to the Estate. The rationale for our decision on this issue can be found in our Opinion and Order of Court dated March 18, 2015, which is a part of the record in this case.

## IV.

Appellants challenge the Decree entered December 15, 2016, alleging that the Court erred in refusing to allow Attorney Richard F. Flickinger to appear on behalf of James R. Wagner, Jr., and Tammy Wagner, on the basis that to allow him to do so would violate Pennsylvania Rule of Professional Conduct 1.9(d). Rule 1.9 provides that a lawyer who has formally represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent. In this case, Mr. Flickinger's former clients were Edward C. Wagner, the now deceased, and Mary B. Shaulis Wagner, also now deceased, both incapable of now giving "informed consent." They secured Mr. Flickinger's legal services in the purchase of a piece of real estate, which is a part of the dispute in this estate administration proceeding. Mr. Flickinger mistakenly believed he was preparing a Deed transferring ownership to Edward and Mary as husband and wife. In fact, they were not legally married, as Edward was still married to Sandra.

In a related quiet title action, as well as in the case at bar, the heirs and assignees of Edward and Mary seek a determination as to whether the real property was owned as joint

tenants with a right of survivorship or as tenants in common. In that case, filed at Westmoreland County Civil Docket No. 5606 of 2008, Mr. Flickinger sought to represent James R. Wagner, Jr. (Edward's nephew), Tammy Wagner (James, Jr.'s wife), and Janet S. Wagner (Edward's sister-in-law, his deceased brother's wife), all of whom have an interest in the disposition of Edward's estate. On the other side of the litigation are Rose Blough and her husband, Kenneth Blough, who may be heirs of or assignees under Mary's estate. In that related case, this Court addressed the ethical implications of Mr. Flickinger representing the heirs to one of his two former clients in the real estate transaction, reasoning as follows in an Opinion issued September 29, 2015:

> This matter is before the Court on Defendants' Motion for Disqualification of Counsel and To Dismiss Petition for Intervention in which Defendants argue that Attorney Richard F. Flickinger should be disqualified from representing Intervenors in this quiet title action as it would create a conflict of interest under Rule 1.9(a) of the Rules of Professional Conduct. After careful consideration given to the arguments of the respective parties, we will grant the Defendants' motion.

> The relevant underlying facts of this case are as follows. Wayne E. Saxman and Christina Saxman conveyed the property that is the subject of this litigation to Edward C. Wagner and Mary B. Wagner, by a Deed dated October 22, 1998. In his "Brief on Disqualification of Counsel," Attorney Flickinger states that he prepared the Deed. The Grantees were identified in the Deed as "Edward C. Wagner and Mary B. Wagner, his wife," although there is no language in the Deed that states that the grantees took title either as tenants by the entireties or as tenants with a right of survivorship. Sometime after the death of Edward Wagner, it was discovered that Edward and Mary were never married. As a consequence, the Administratrix of Edward's Estate filed this quiet title action to determine the relative ownership interests in the property.

> Attorney Flickinger was retained by Janet S. Wagner and James R. Wagner, Jr., to represent their interests in the outcome of this case. Based upon the allegations contained in their "Petition for Intervention," whether they prevail will depend upon whether Edward and Mary Wagner took the property as tenants by the entireties, and therefore, by operation of law, as joint tenants with a right of survivorship.

> The Defendants' position is that the facts of the case support a clear intent on Edward and Mary's part to take ownership of the property as husband and wife. Attorney Flickinger's clients argue the opposite position.

The Administratrix, Peggy Hooker, testified that she believes Attorney Flickinger's prior representation of Defendant Mary Wagner involving the same property raises an appearance of impropriety.

Rule 1.9(a) of the Rules of Professional Conduct provide, "A lawyer who has formally represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."

In this instance, Attorney Flickinger, as the scrivener of the Deed, can potentially offer relevant testimony regarding the facts and circumstances surrounding the drafting and signing of the Deed, which will aid the fact-finder in making a determination as to the legal status of the grantees in relation to one another. His testimony could be pivotal in the ultimate outcome of this case. We agree with Defendants that Attorney Flickinger may have gained confidential information in his representation of his former clients, Edward and Mary, which could now be used to the detriment of his former clients in this quiet title action.

In an abundance of caution, based upon the facts and circumstances presented in this case, we find that Attorney Flickinger should be disqualified from representing the Petitioners in this action.

The same parties and the same piece of real estate are the subject of the litigation in the present matter. At the hearing held on December 15, 2016, this Court stated as follows:

The whole manner in which you have to look at this is to avoid the appearance of impropriety, and clearly there is the appearance of impropriety, and you are wearing one hat for one of the parties and then putting on another hat for an adverse party in these matters collectively. They are all having to do ultimately with the distribution of property in the estate, real estate and otherwise. And for you to say, well, we're not sure whether the real estate is an asset in the estate or not doesn't matter, it's purported to be at this point and to be determined ultimately. I am going to make the same determination in this matter as I made in the last, that for you to be permitted to represent any party adverse to the party that Mr. Leonard represents here creates the appearance of impropriety, and under the same reasoning, you are not to appear on behalf of the Wagners in this matter.

(December 15, 2016, Transcript, pp. 11-13.)

V.

Appellants further challenge the Court's December 15, 2016, Decree and determination that the document entitled "RELEASE," signed by Sandra J. Kelly a/k/a Wagner on November 21, 2008, assigned her rights to Rose M. Blough and Kenneth E. Blough, and did not release any rights that she may have against the Estate of Edward C. Wagner. The uncontroverted evidence presented by the scrivener of the "Release," John M. Leonard, Esq., at the hearing held on December 15, 2016, was that Sandra assigned all of her right and interest in the Estate of Edward C. Wagner to the Bloughs as a means to settle a dispute over entitlement to spousal benefits under Edward's pension plan. No evidence to the contrary was presented, and no argument was made in support of a contrary finding. Accordingly, the Court's Decree of December 15, 2016, was not entered in error.

VI.

In the alternative, Appellants argue that the Court erred in determining that the document entitled "RELEASE" was an assignment without recognizing the rule applicable to ambiguous documents. In fact, when Mr. Flickinger was given the opportunity to make an argument in support of his Motion for Reconsideration of the December 15, 2016, Order, he declined and appeared to concede opposing counsel's argument, saying, "I am not going to try to form a response at this time." When this Court asked him whether it was correct that he had no argument to make against opposing counsel's Motion to Dismiss Appellant's Motion for Reconsideration, Mr. Flickinger replied, "That's correct." (January 6, 2017, Hearing Transcript, p. 7.) Therefore, this issue has not been previously raised and ruled upon, nor has it been

preserved for appeal. *Lineberger v. Wyeth*, 894 A.2d 141, 147-48 (Pa.Super. 2006) (arguments not raised initially before the trial court cannot be raised for the first time on appeal).

## VII.

Finally, Appellants argue that the Court erred in its January 9, 2017, Order refusing to allow Attorney Richard F. Flickinger to represent Tammy Wagner and James R. Wagner, Jr., based upon the dictates of Pennsylvania Rule of Professional Conduct 1.9. Again, as in the foregoing paragraph, Mr. Flickinger abandoned his argument on this point, hence he has no adverse ruling from which to pursue an appeal.

BY THE COURT:

_____
RICHARD E. McCORMICK, JR.,
PRESIDENT JUDGE

ATTEST:

_____
Prothonotary

cc:     Richard F. Flickinger, Esq. - for the Appellants Wagners
        John M. Leonard, Esq. - for Rose M. Blough & Kenneth E. Blough
        Peggy Hooker, Esq., Administratrix d.b.n.c.t.a.

CERTIFIED AS A TRUE AND CORRECT COPY AS
OF RECORD IN THE OFFICE OF REGISTER OF
WILLS & CLERK OF ORPHANS' COURT,
WESTMORELAND COUNTY, PENNSYLVANIA

Register of Wills & Clerk of Orphans' Court,
DATED: Mar 30, 2017